1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    KOCHAGORN SINSUKTHAWORN, et al.,          Case No.  22-cv-04644-JSC

8                 Plaintiffs,

9          v.                                   ORDER RE: DEFENDANTS' MOTION
                                                FOR SUMMARY JUDGMENT AND
10   COUNTY OF NAPA, et al.,                     PLAINTIFFS' MOTION FOR
                                                SANCTIONS
11                Defendants.
                                                Re: Dkt. Nos. 107, 114

12

13          Kochagorn Sinsukthaworn and James Hopkins ("Plaintiffs") sue the County of Napa,

14   James Walsh, and Richard Scannell ("Defendants"), challenging Defendants' seizure and

15   destruction of "their legal and properly licensed marijuana plants."  (Dkt. No. 58 ¶ 1.)[1]  Pending

16   before the Court are Defendants' motion for summary judgment and Plaintiffs' motion for

17   sanctions due to spoliation of evidence.  Having carefully considered the parties' submissions,

18   including supplemental submissions, and with the benefit of oral argument on January 9 and

19   March 25, 2025, the Court GRANTS Defendants' motion for summary judgment and DENIES

20   Plaintiffs' motion for sanctions.

21                                      **BACKGROUND**

22   **I.     FACTS[2]**

23          In late 2019, Plaintiffs formed Infinity Cannabis Growth LLC.  (Dkt. No. 125 at 5.)  They

24

_____

25   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.
26   [2] Defendants object to the facts in Plaintiffs' opposition unsupported by evidence.  "Factual
     contentions made in support of or in opposition to any motion must be supported by an affidavit or
27   declaration and by appropriate references to the record."  N.D. Cal. Civ. L.R. 7-5(a); *see also
     Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("Legal memoranda and oral
28   argument, in the summary-judgment context, are not evidence, and do not create issues of fact
     capable of defeating an otherwise valid motion for summary judgment.").  So, the Court

United States District Court
Northern District of California

United States District Court
Northern District of California

1  acquired property in Clear Lake, California and "obtained a provisional cultivation license from

2  the California Department of Food and Agriculture." (*Id.* at 5, 7.) The cultivation license, valid

3  from October 2020 to October 2021, "included a CalCannabis Cultivation Licensing Waste

4  Management Plan," stating Plaintiffs could compost cannabis waste on-site or self-haul the waste

5  to designated locations. (*Id.* at 5, 7, 9.)

6  On July 17, 2021, at approximately 3:00 a.m., a California Highway Patrol ("CHP")

7  officer stopped a box truck traveling on a Napa highway. (Dkt. No. 118-5 at 4.) The driver,

8  Brayan Mendoza, "advised the rear of the vehicle contained 750 marijuana plants." (Dkt. No.

9  118-5 at 4.) Neither Mr. Mendoza nor the other two occupants, Erlin Navarro and Geovanny

10  Martinez, "possessed a valid California Cannabis Distribution License." (*Id.*) The occupants were

11  in possession of a typed-out paper titled "Additional Agreement," which stated:

12      I, Luis Alovcan Picked up clones from 11020 Sky High ridge rd.
       Lower Lake, CA 95457 amount of 756 clones.
13     – GMO Cookie 252 Plants
       – Wedding Cake 252 Plants
14     – Sundae Driver 252 Plants.

15      Date picked up 05/27/2021 and Return by 06/15/2021.

16  (Dkt. No. 118 ¶ 3.) "The document had three separate signatures with the following names

17  handwritten next to their respective signatures: Luis Alovcan, Kochagorn Sinsukthaworn, and

18  James Hopkins." (*Id.*)

19  The CHP officers requested assistance from the Napa Special Investigations Bureau. (Dkt.

20  No. 118 ¶ 2.) Officer Frank Walsh, a Napa Special Investigations Bureau investigator, sent

21  Deputy Richard Scannell, a Napa Police Officer assigned to the Napa Special Investigations

22  Bureau, "to the scene to assist CHP in the investigation." (*Id.*)

23  Upon arriving, Deputy Scannell "observed a large amount of what appeared to be cannabis

24  clone plants in the back of the truck." (Dkt. No. 117-4 at 9.) The driver, Mr. Mendoza, told

25  Deputy Scannell "he had picked up these plants from the address on the 'Additional Agreement'

26

27

28  disregarded assertions in Plaintiffs' opposition unsupported by evidence, including the recitation
   of facts at Docket No. 123, page 14.

2

1    and was delivering them to the address that was entered in his phone's GPS (2416 Radley Court,

2    Hayward, California)."  (Dkt. No. 118 ¶ 3.)  Mr. Mendoza also told Deputy Scannell he was taking

3    the plants "to the garbage."  (Dkt. No. 125 at 22.)

4        Because the box truck occupants did "not hav[e] valid credentials for the transportation of

5    marijuana," Deputy Scannell seized the plants and transported them to a Napa Special

6    Investigations Bureau location for destruction.  (Dkt. No. 117-4; Dkt. No. 118 ¶ 4.)

7        The following day, "after . . . discussions with Scannell via telephone to discuss the box-

8    truck stop," Officer Walsh "took over the investigation" into the 11020 Sky High Ridge Road

9    address listed on the "Additional Agreement."  (Dkt. No. 118 ¶¶ 4-5.)  "Through the web portal

10   for the California Department of Cannabis Control," Officer Walsh learned the property "was

11   owned by Infinity Cannabis Growth, LLC and associated to a provisional 'Adult-Use-Small

12   Mixed-Light Tier 1' cultivation license . . . issued to Plaintiff Kochagorn Sinsukthaworn."  (*Id.* ¶

13   5; Dkt. No. 118-5 at 5.)  Through "a routine marijuana overflight operation," Officer Walsh

14   learned Plaintiffs' property had "6 'hoop-style' greenhouses containing growing marijuana plants

15   that appeared consistent with Plaintiff's 'Adult-Use-Small Mixed-Light Tier 1' cultivation

16   license."  (Dkt. No. 118 ¶ 6.)

17       On July 28, 2021, Officer Walsh authored a warrant to search the 11020 Sky High Ridge

18   Road property.  (*Id.* ¶ 11.)  In the warrant affidavit, Officer Walsh stated that because the box

19   truck occupants did not have "a distribution license to transport the marijuana per the California

20   Department of Cannabis Control[,] . . . [t]heir conduct of commercial marijuana cultivation and

21   transportation activity [was] in violation of California Health & Safety Code sections 11358,

22   11359 and 11360."  (Dkt. No. 118-2 at 7.)  Judge Wood of the Napa County Superior Court issued

23   the warrant.  (*Id.* ¶ 14.)  The warrant authorized the search of Plaintiffs' property and the seizure

24   and destruction of marijuana not seized as evidentiary samples.  (*Id.* at 3.)

25       On August 2, 2021, Officer Walsh and others executed the warrant.  (Dkt. No. 118 ¶ 15.)

26   Ms. Sinsukthaworn was detained during the search, which lasted approximately 120 minutes.  (*Id.*

27   ¶¶ 15, 18.)  The officers "located and eradicated a total of 2326 growing, immature marijuana

28   plants from the 6 hoop style greenhouses."  (*Id.* ¶ 18.)  They also discovered and seized firearms

United States District Court
Northern District of California

1    and "numerous large black garbage bags full of bulk processed marijuana shake." (*Id.* ¶¶ 15-18.)

2    During the execution of the warrant, Officer Walsh "mirandized Sinsukthaworn before

3    interviewing her." (*Id.* ¶ 16.) Ms. Sinsukthaworn said she "had the plants located in the box-truck

4    removed because they were 'yellow plants' that were 'sick' and/or 'dead.'" (*Id.*)

5    ## II.    PROCEDURAL HISTORY

6    Plaintiffs each filed a tort claim with Napa County in November 2021, which were rejected

7    in January 2022. (Dkt. No. 1 at 8.)

8    In June 2022, Plaintiffs were charged with violating California Health and Safety Code

9    sections 11358(c), 11359(b), and 11366.5(a) for unlawfully cultivating marijuana; possessing

10   marijuana for the purpose of sale; and making available use of a space for the purpose of

11   unlawfully manufacturing, storing, and distributing a controlled substance. (Dkt. Nos. 116-1, 116-

12   2.) The Napa County Superior Court denied Plaintiffs' motion to quash the search warrant, (Dkt.

13   No. 116-6 at 3), and each Plaintiff eventually pled no contest to a charge of public nuisance in

14   violation of California Penal Code sections 370 and 372.5. (Dkt. Nos. 116-7; 116-8.)

15   In July 2022, Plaintiffs—proceeding without attorney representation—filed this suit in

16   state court against the County of Napa and Officer Walsh, among other defendants. (Dkt. No. 1 at

17   5-7.) The following month the defendants removed the case to federal court based on federal

18   question jurisdiction. (Dkt. No. 1 at 1.) In October 2022, Plaintiffs obtained attorney

19   representation and filed an amended complaint suing the County of Napa, Officer Walsh, and

20   Deputy Scannell.[3] (Dkt. No. 26, 58.) The five-count complaint "seeks compensatory and punitive

21   damages for serious financial losses and emotional distress suffered by [Plaintiffs] when their

22   legal and properly licensed marijuana plants were seized and destroyed." (Dkt. No. 58 ¶ 1.)

### JUDICIAL NOTICE

24   Both parties filed requests for judicial notice. First, Defendants request the Court

25   judicially notice complaints, filings, and transcripts of hearings from Plaintiffs' criminal case.

26

27   ――――――――――――――――――――
     [3] Throughout the filings, the parties use various titles (Officer, Deputy, Sergeant) to refer to
28   Defendants Scannell and Walsh. Consistent with Frank Walsh's declaration, (Dkt. No. 118), the
     Court refers to them in this order as Officer Walsh and Deputy Scannell.

United States District Court
Northern District of California

United States District Court
Northern District of California

(Dkt. No. 116.)  The Court grants the request and judicially notices Exhibits A through F at Docket No. 116.  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record . . . , including documents on file in federal or state courts.").  Second, Defendants request the Court judicially notice "certain pertinent and relevant statute [sic] from California Business and Professions Code, California Health and Safety Code and California Code of Regulations, Title 4."  (Dkt. No. 116 at 6-7; Dkt. No. 129.)  The Court judicially notices the provisions in Exhibits H and I at Docket No. 116 and in Exhibit B at Docket No. 140, as these provisions were "in effect at the time of the subject incident on August 2, 2021."  (Dkt. No. 116 at 7; Dkt. No. 140 at 2-3.)  As to the exhibits reproducing the provisions currently in effect, judicial notice is not required.

Plaintiffs request the Court judicially notice "a true and correct copy of Proposition 64: The Adult Use of Marijuana Act dated June 27, 2017."  (Dkt. No. 124; Dkt. No. 126 (attaching the correct exhibit).)  Defendants object on the ground of relevance.  (Dkt. No. 127 at 6.)  Indeed, Plaintiffs do not explain why the Court would reference the text of proposed laws rather than the laws in effect when the incidents giving rise to this complaint occurred.  So, the Court denies Plaintiffs' request as the exhibit has no bearing on this action.

## SUMMARY JUDGMENT

Defendants move for an order granting summary judgment, or in the alternative, partial summary judgment, on the following remaining causes of action: "[1.] Fourth Amendment Unreasonable Search and Seizure under 42 U.S.C. §1983; [2.] *Monell* liability under 42 U.S.C. § 1983 (Ratification); [3.] *Monell* liability under 42 U.S.C. §1983 (Inadequate Training); [4.] Bane Act (Cal. Civ. Code §52.1); and [5.] Punitive Damages."  (Dkt. No. 114 at 2.)   Plaintiffs ask the Court to deny Defendants' motion for summary judgment and "grant partial summary judgment on liability in favor of Plaintiffs."  (Dkt. No. 123 at 25.)  As Plaintiffs did not separately move for summary judgment, the Court will not construe Docket No. 123 as a cross-motion for summary judgment.  Rather, the Court construes Docket No. 123 as it was noticed—an "opposition to Defendants' Motion for Summary Judgement and/or Partial Summary Judgment."  (*Id.* at 2.)

United States District Court
Northern District of California

## I.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he burden then moves to the opposing party, who must present significant probative evidence tending to support its claim."  *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (cleaned up).

In ruling on a motion for summary judgment, the Court must "view the evidence presented through the prism of the substantive evidentiary burden."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Id.*

## II.     FOURTH AMENDMENT SEARCH AND SEIZURE (COUNT I)

Count I alleges unlawful search and seizure and false arrest pursuant to 42 U.S.C § 1983. (Dkt. No. 58 ¶¶ 22-27.)  Specifically, Plaintiffs allege "the taking of plaintiff into their custody and control without probable cause" and the subsequent seizure and destruction of "lawful cannabis crops being grown pursuant to a license" violated Plaintiffs' Fourth Amendment rights. (*Id.* ¶¶ 23-25.)

### A.     Officer Walsh

Defendants contend the Fourth Amendment claim against Officer Walsh fails because "[t]he search of Plaintiffs' property was undertaken with a particularized warrant supported by probable cause, and reasonably executed."  (Dkt. No. 114 at 24.)  Plaintiffs do not challenge the warrant's particularity, its execution, or that as presented to the Superior Court judge it was supported by probable cause; rather, they contend Officer Walsh violated the Fourth Amendment because he procured the warrant through judicial deception.

1

2

**1.    Judicial Deception**

A Fourth Amendment violation occurs when an officer "deliberately or recklessly [makes] false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (quotation marks omitted). In the case of an omission, "by reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997) (quotation marks omitted). "To survive summary judgment on a claim of judicial deception, a § 1983 plaintiff need not establish specific intent to deceive the issuing court." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Rather, the plaintiff must satisfy two requirements:

> (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and

> (2) make a "substantial showing" that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth.

*Id.* "If these two requirements are met, the matter must go to trial." *Id.*

**a.    Section 26012**

Plaintiffs assert Officer Walsh engaged in judicial deception by omitting from the warrant affidavit "the fact that the Department of Cannabis Control (DCC) held exclusive jurisdiction over the regulation and licensing of commercial cannabis activity." (Dkt. No. 123 at 21.) In support of this assertion, Plaintiffs cite section 26012 of the California Business and Professions Code, which provides:

> It being a matter of statewide concern, except as otherwise authorized in this division, the department[4] shall have the sole authority to create, issue, deny, renew, discipline, condition, suspend, or revoke licenses for commercial cannabis activity.

Cal. Bus. & Prof. Code § 26012(a). So, Plaintiffs contend, "the state court lacked jurisdiction to issue the search warrant to seize Plaintiffs' licensed crops." (Dkt. No. 123 at 12.)

As an initial matter, Plaintiffs' interpretation of section 26012(a) is unpersuasive, as it would insulate licensees from law enforcement investigation and prosecution, even if those

---

[4] "'Department' means the Department of Cannabis Control within the Business, Consumer Services, and Housing Agency." Cal. Bus. & Prof. Code § 26001(t).

licensees are acting outside the scope of their license.  In this case, for example, the warrant affidavit states Plaintiffs were violating their state-issued *cultivation* license by *distributing and selling* marijuana.  While arguably only the Department of Cannabis has authority to revoke Plaintiffs' cultivation license for violations related to that license, section 26012(a) does not prevent law enforcement from investigating and prosecuting a cultivator's unlicensed distribution of marijuana.  *See* Cal. Bus. & Prof. Code §26200(c) (stating "this division shall not be interpreted to supersede or limit existing local authority for law enforcement activity").  Moreover, Plaintiffs' interpretation is inconsistent with their pleas of no contest in the state court criminal action.

But the Court need not interpret section 26012(a) for purposes of this order.  Regardless of the statute's meaning, there is no support for Plaintiffs' proposition that an officer engages in judicial deception by omitting a law from a warrant affidavit.  As Plaintiffs' primary judicial deception case, *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), demonstrates, judicial deception is based on the omission of facts.  In *Liston*, the officer omitted from the warrant application "the presence of the For Sale/Sold signs" outside the home for which he obtained a search warrant.  "[P]robable cause to search the residence . . . depended *entirely* on the strength of the evidence that James Rocky Hill," an individual investigators believed was involved in a large-scale methamphetamine manufacturing and distribution network, "currently resided at that address."  (*Id.* at 968, 973).  The Ninth Circuit concluded the omission supported an inference of judicial deception, observing the For Sale/Sold signs "would put a reasonable magistrate on notice that a change in occupancy would be occurring in the near future, if it had not already occurred, and that special consideration must be given both to the timeliness of the evidence supporting the warrant application and the timeliness of the execution of the warrant itself."  *Id.* at 974.  Whereas in *Liston* the omitted fact was uniquely accessible to the investigating officer, the asserted omission in this case—a statute and its legal effect—was not uniquely accessible to Officer Walsh.  Judges decide if there is probable cause, which means judges are uniquely positioned to know and apply the law.  *See id.* at 973 (emphasis added) (cleaned up) ("[A] Fourth Amendment violation occurs where the affiant intentionally or recklessly omitted *facts* required to prevent technically true statements in the affidavit from being misleading.").

1    At oral argument, Plaintiffs acknowledged they are unaware of any case holding an officer

2    engaged in judicial deception by omitting a law from a warrant affidavit, and they conceded that

3    Officer Walsh's omitting section 26012(a) from the warrant affidavit cannot form the basis of a

4    judicial deception claim.

**b.    Cannabis Waste**

5

6    At oral argument, Plaintiffs raised a new theory: that Officer Walsh engaged in judicial

7    deception by omitting from the warrant affidavit the fact the box truck contained cannabis waste,

8    which the box-truck driver said he was taking to the garbage.  Because this argument was not

9    raised in the opposition brief, the Court granted Plaintiffs leave to file a supplemental opposition,

10   to which Defendants could file a supplemental reply.  (Dkt. No. 132.)

11   In the supplemental opposition brief, Plaintiffs do not clearly argue the material omission

12   was the condition of the plants.  Instead, Plaintiffs build on their prior argument that Officer

13   Walsh omitted laws relevant to the probable cause determination:

15          Walsh . . . submit[ted] a warrant application that failed to disclose
           critical, readily available information, including:
16          1. Plaintiffs' lawful status as licensed cannabis cultivators operating
           under the authority of the DCC;
17          2. The existence of a regulatory framework explicitly authorizing
           licensed cultivators to self-haul cannabis waste to approved disposal
           facilities;
18          3. The Department of Cannabis Control's exclusive regulatory
           authority over licensed cannabis activity under Business &
19          Professions Code § 26012(a)(1).

20   (Dkt. No. 138 at 8.)  None of the three asserted omissions support a claim of judicial deception.

21   As to the first, the warrant affidavit states Plaintiffs "had a provisional cultivation only license,"

22   (Dkt. No. 118-2 at 7-8), thus effectively conveying "Plaintiffs' lawful status as licensed cannabis

23   cultivators."  So, as a factual matter, and drawing all reasonable inferences in Plaintiffs' favor, the

24   information Plaintiffs contend was omitted was in fact included in the warrant affidavit.  As for

25   the second and third asserted omissions, "[t]he existence of a regulatory framework" and the

26   department's "exclusive regulatory authority" are omissions of law, not fact.  As described above,

27   and as Plaintiffs conceded at oral argument, the caselaw does not support a judicial deception

28   claim being based on the omission of a law.

United States District Court
Northern District of California

9

1       Elsewhere in the supplemental opposition, Plaintiffs argue "[t]he destination of the truck,

2   the fact that [the driver of the truck] stated it was cannabis waste, and the connection to a licensed

3   cultivator were all material facts" that "if disclosed, would have compelled a magistrate judge to

4   reach the opposite conclusion – that the transport was lawful." (Dkt. No. 138 at 5.)  But even

5   when the asserted omission is the fact the plants were cannabis waste, Plaintiffs' judicial deception

6   claim still fails as a matter of law.

7                              **i.    Material Omission Element**

8       For purposes of this motion, given the evidence in the record and the mandate to draw all

9   reasonable inferences in Plaintiffs' favor, the Court accepts the plants were cannabis waste.  Ms.

10  Sinsukthaworn described the plants in the box truck as "yellow" and "dead" and "sick." (Dkt. No.

11  115 at 15:00; *id*. at 16:11 (stating Plaintiffs had to "destroy" and "throw[] away" the plants).)  And

12  Plaintiffs produced evidence the driver of the box truck told Deputy Scannell the plants were

13  "garbage" and they were on the way "to the garbage." (Dkt. No. 125 at 22.)

14      For purposes of the summary judgment motion, the Court also concludes Plaintiffs could

15  lawfully transport cannabis waste without a distribution license under the regulations in effect at

16  the time.  Section 16308, titled "Cannabis Waste Management," required licensees "to comply

17  with the method(s) of managing cannabis waste identified on its cannabis waste management plan

18  in accordance with section 16108." Cal. Code. Regs. Tit. 4 § 16308(c).[5]  Section 16108, in turn,

19  provided:

20              An applicant's cannabis waste management plan shall identify one
                or more of the following methods for managing cannabis waste
21              generated on its licensed premises:

22              . . .

23              (c) Self-haul cannabis waste to one or more of the following:

24              (1) A manned, fully permitted solid waste landfill or transformation
                facility;
25              (2) A manned, fully permitted composting facility or manned
                composting operation;
26              (3) A manned, fully permitted in-vessel digestion operation;

27

28  _____
    [5] The Court judicially notices the version of section 16308 in effect in July 2021, which is at
    Docket No. 116 at 11-13.

*United States District Court*
*Northern District of California*

(4) A manned, fully permitted transfer/processing facility or manned transfer/processing operation; or
(5) A manned, fully permitted chip and grind operation or facility.
(6) A recycling center . . .

*Id.* § 16108.[6]  Consistent with this regulation, Plaintiffs' "CalCannabis Cultivation Licensing Waste Management Plan" permitted them to "[s]elf-haul" their waste to either "a manned fully permitted solid-waste landfill or transformation facility" or "a manned fully permitted transfer/professing facility or manned transfer/processing operation."[7]  (Dkt. No. 125 at 9.)

So, a reasonable trier of fact could find the affidavit contained a material omission.  The affidavit as written established a "fair probability" Plaintiffs were "cultivating large amounts of marijuana and doing so in violation of their state issued license" as Officer Walsh asserted: At 3:00 a.m., a box truck was transporting approximately 750 cannabis plants that had been picked up from Plaintiffs' property; Plaintiffs did not have a distribution license to transport marijuana; and none of the three occupants of the car had a distribution license  *See Illinois v. Gates,* 462 U.S. 213, 238 (1983).  These facts together establish probable cause that Plaintiffs were unlawfully selling marijuana.  But when the warrant is supplemented to include the plants' condition, the warrant no longer establishes a fair probability Plaintiffs were unlawfully selling marijuana.  The fact the plants were cannabis waste, which Plaintiffs could lawfully self-haul, "would put a reasonable magistrate on notice" that the box truck pulled over in July 2021 was not transporting cannabis for the purpose of selling it.  *See Liston*, 120 F.3d at 974.  Put another way, had Officer Walsh included the fact the plants were waste, "it is extremely doubtful that an issuing judge would simply have issued the warrant . . . without more information."  665 F.3d at 1086.

---

[6] The Court judicially notices the version of section 16108 in effect in July 2021, which is at Docket No. 140-2 at 2-3.

[7] Defendants object to this exhibit, including for lack of foundation, lack of authentication, and "incompleteness of what the document relates to."  (Dkt. No. 139 at 4.)  Defendants' objection is overruled.  (Dkt. No. 125 at 5 (Ms. Sinsukthaworn attesting the exhibit is a copy of her "CalCannabis Cultivation Licensing Waste Management Plan, which provided that [Plaintiffs] could do on-site composting of cannabis waste and self-haul").)  *See Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 773–74 (9th Cir. 2002) (cleaned up) ("In a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

### ii.    Substantial Showing

But even accepting the plants were cannabis waste that Plaintiffs were permitted to self-haul, Plaintiffs fail to make the required "substantial showing" that Officer Walsh "intentionally or with reckless disregard for the truth" omitted from the warrant affidavit the plants' condition.  *See Bravo*, 665 F.3d at 1083.  "To survive summary judgment, [Plaintiffs] need only make a substantial showing of a deliberate or reckless omission, not provide 'clear proof.'"  *Id.*  But here, as Plaintiffs identify no evidence supporting an inference Officer Walsh knew the plants were cannabis waste, there has been no substantial showing.

It is undisputed Officer Walsh was not present at the traffic stop.  On July 17, 2021, upon receiving a phone call requesting assistance with the box-truck stop, Officer Walsh "contacted Scannell and requested that he respond to the scene to assist CHP in the investigation."  (Dkt. No. 118 ¶ 2.)  "On July 18, 2021, after [his] discussions with Scannell via telephone to discuss the box-truck stop on July 17, 2021, [Officer Walsh] took over the investigation."  (Dkt. No. 118 ¶ 5.)  So, there is no evidence Officer Walsh personally observed the plants.

And Plaintiffs do not identify evidence from which a reasonable trier of fact could infer Officer Walsh learned of the plants' condition.  For example, Plaintiffs do not identify evidence from which a trier of fact could infer Deputy Scannell told Officer Walsh about the plants' condition or that Officer Walsh viewed pictures of the plants before authoring the warrant affidavit.  To the contrary, as recited below, Plaintiffs affirmatively argue Deputy Scannell did not advise Officer Walsh of the plants' adulterated condition.  (Dkt. No. 138 at 13 (arguing "Scannell's involvement was far more than peripheral" as "he allegedly failed to report Mr. Mendoza's repeated statements that the cannabis was waste en route to disposal"); *id.* at 8 (arguing Scannell "cherry-picked the information he relayed to Walsh, selectively omitting exculpatory facts that would have negated probable cause"); Dkt. No. 123 at 19 (arguing Scannell "failed to alert Walsh that Mr. Mendoza repeatedly told him that the plants were going to a waste facility").)  Plaintiffs' opposition and supplemental opposition do not address the issue of Officer Walsh's state of mind regarding the plants' condition.

Finally, Plaintiffs do not argue, let alone cite any supporting caselaw, that Officer Walsh

United States District Court
Northern District of California

1   can be charged with Deputy Scannell's knowledge for purposes of a judicial deception claim; that

2   is, that the challenge to the warrant can be based on the affiant's imputed knowledge.  The Court's

3   own research has not uncovered any case in which the required substantial showing was satisfied

4   by someone other than the warrant affiant having knowledge of the omitted fact.  To the contrary,

5   in preparing a warrant affidavit officers are permitted to rely on facts learned from other officers.

6   *See United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the

7   Government engaged in a common investigation are plainly a reliable basis for a warrant applied

8   for by one of their number."); *United States v. Steed*, 465 F.2d 1310, 1315 (9th Cir. 1972) (stating

9   "much of the information appearing in the affidavit was from the personal knowledge of the

10  affiant and from information furnished to him by fellow officers engaged in a common

11  investigation" and concluding "such sources to be reliable" and "that the affidavit for search

12  warrant provided a sufficient basis for the finding . . . of probable cause").

13          Meanwhile, the cases upon which Plaintiffs rely are distinguishable.  In *Bravo*, the warrant

14  application failed to disclose that Javier Bravo Jr.—an individual believed to be closely associated

15  with a shooting being investigated—was serving a "two-year sentence imposed over six months

16  prior to the incident occasioning the search warrant."  665 F.3d at 1080, 1084.  Regarding the

17  officer's state of mind, the Ninth Circuit held the plaintiffs were "entitled to the reasonable

18  inference that [the officer] in fact observed the two-year sentence on the rap sheet and either

19  deliberately or recklessly failed to disclose it in his affidavit."  *Id.* at 1087.  The court noted

20  Plaintiffs presented evidence the officer "reviewed Javier Jr.'s rap sheet," on which the "two-year

21  sentence appears . . . a mere two lines below" a fact the officer included in his affidavit.  *Id.*

22          Whereas the *Bravo* plaintiffs identified evidence the officer saw a document containing the

23  omitted information, thus making it reasonable to infer he in fact saw the omitted information,

24  Plaintiffs here identify no evidence supporting a reasonable inference Officer Walsh was aware of

25  the plants' adulterated condition.  And while Plaintiffs repeatedly argue Officer Walsh's

26  investigation was insufficient, they do not identify evidence supporting this argument.  Whereas

27  the *Bravo* plaintiffs "submitted deposition testimony by [a lieutenant], who stated 'that a

28  reasonably competent police officer, had he seen [the two-year sentence on Javier Jr.'s rap sheet],

United States District Court
Northern District of California

1 | would have done additional follow-up,'" 665 F.3d at 1087, there is no evidence about the

2 | investigation a reasonably competent police officer in Officer Walsh's position would have done

3 | regarding the condition of the marijuana plants in this case.

4 |     Plaintiffs' citation to *Liston* is also unpersuasive.  There, the court concluded the plaintiffs

5 | made the required substantial showing, in part "[g]iven the importance of the [omitted

6 | information] to the probable cause analysis."  120 F.3d at 975.  But in *Liston*, a jury could infer the

7 | officer saw the omitted information—a large "For Sale/Sold" real estate sign at the house—given

8 | evidence the officer drove by the house.  *Id.*  Here, while the plants' adulterated condition would

9 | have been important to the probable cause analysis, Plaintiffs identify no evidence supporting an

10 | inference Officer Walsh was aware of the plants' poor condition.

11 |     In sum, even accepting the plants were cannabis waste, Plaintiffs identify no evidence from

12 | which a reasonable trier of fact could infer Officer Walsh knew the plants were cannabis waste or

13 | had reason to believe they were cannabis waste.  Thus, Plaintiffs fail to make a substantial

14 | showing Officer Walsh's omission of this fact from the warrant affidavit was deliberate or

15 | reckless.  So, the Court GRANTS summary judgment in favor of Officer Walsh on the Section

16 | 1983 claim.

17 |     **B.**    **Deputy Scannell**

18 |     Plaintiffs assert Deputy Scannell is liable under the integral participant doctrine because he

19 | "failed to inquire as to the purpose of the transport of the cannabis waste on July 17, 2021, and

20 | failed to alert Walsh that Mr. Mendoza repeatedly told him that the plants were going to a waste

21 | facility."  (Dkt. No. 123 at 19.)  Plaintiffs raise essentially the same argument in their

22 | supplemental opposition, arguing "Scannell chose not to investigate the veracity of [the box truck

23 | driver's] claims" and "cherry-picked the information he relayed to Walsh, selectively omitting

24 | exculpatory facts that would have negated probable cause."  (Dkt. No. 138 at 8.)

25 |     "Section 1983 liability extends to those who perform functions 'integral' to an unlawful

26 | search, even if their individual actions do not themselves rise to the level of a constitutional

27 | violation."  *Bravo*, 665 F.3d at 1089–90.  To be liable under the "integral participant" doctrine, the

28 | defendant official "must be more than a 'mere bystander.'"  *Peck v. Montoya*, 51 F.4th 877, 889

1   (9th Cir. 2022) (cleaned up).  A defendant is liable when he "sets in motion a series of acts by

2   others which the defendant knows or reasonably should know would cause others to inflict the

3   constitutional injury." *Id.*  While the integral participation doctrine does not require that the

4   officer's actions rise to the level of a constitutional violation, "it does require some fundamental

5   involvement in the conduct that allegedly caused the violation."  *Blankenhorn v. City of Orange*,

6   485 F.3d 463, 481 (9th Cir. 2007).

7        It is undisputed Deputy Scannell did not author the search warrant.  (Dkt. No. 128-1 at 3.)

8   Nor was he involved in the subsequent investigation.  (Dkt. No. 118 ¶ 5.)  So, his integral

9   participant liability must stem from his conveying or failing to convey information to Officer

10   Walsh, who conducted the investigation.  But, as discussed above, Plaintiffs fail to make the

11   requisite substantial showing to bring a judicial deception claim.  As there is no judicial deception

12   claim, the Court cannot conclude Deputy Scannell was an integral participant in a scheme to

13   engage in judicial deception.  And there is no other constitutional violation for which to find

14   Deputy Scannell liable as an integral participant. *See Perez v. City of Fresno*, 591 F. Supp. 3d

15   725, 752 n.21 (E.D. Cal. 2022), *aff'd,* 98 F.4th 919 (9th Cir. 2024) ("Liability under an integral

16   participation theory requires the existence of an underlying constitutional violation.").  Plaintiffs'

17   citations are general recitations of the legal standard or else inapposite.  *See, e.g.*, *Memphis Cmty.*

18   *Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) (discussing damages in section 1983 case); *Boyd*

19   *v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (finding integral participant liability when the

20   defendant officers were "aware of the decision to use the flash-bang, did not object to it, and

21   participated in the search operation knowing the flash-bang was to be deployed").

22        The Court does not foreclose the possibility that in another case, a defendant officer who

23   withholds material facts from the officer who applies for a warrant may be liable under an integral

24   participant or other theory of liability.  But to so hold in this case would be inappropriate as

25   Plaintiffs never addressed Deputy Scannell's liability in the event there is no viable judicial

26   deception claim and did not set forth an alternative theory of liability.  Plaintiffs did not even

27   clearly argue the material omission was the plants' condition.  And, the Court is not independently

28   aware of any caselaw supporting liability under such circumstances.  So, based on the arguments

1    and evidence before it, the Court GRANTS summary judgment in favor of Deputy Scannell on the

2    section 1983 claim.

3    **III.    *MONELL* LIABILITY (COUNTS II AND III)**

4             Municipalities are considered "persons" under section 1983 and therefore "may be sued for

5    constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

6    has not received formal approval through the body's official decision making channels." *Monell*

7    *v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978).  Of the three possible

8    theories of *Monell* liability, *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018),

9    Plaintiffs' complaint advances ratification and failure to train theories.  (Dkt. No. 58 at 9-10).

10   Defendants move for summary judgment on both theories.  Because Plaintiffs' opposition only

11   addresses the failure to train theory, (Dkt. No. 123 at 23-24), Plaintiffs have abandoned their

12   second cause of action for municipal liability under a ratification theory.  *See Jenkins v. Cnty. of*

13   *Riverside*, 398 F.3d 1093, 1095 (9th Cir. 2005) (a plaintiff "abandon[s] her . . . claims by not

14   raising them in opposition to the . . . motion for summary judgment").

15            To establish municipal liability under *Monell,* a plaintiff "must prove that (1) he was

16   deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to

17   deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving

18   force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th

19   Cir. 2020).  Here, Plaintiffs cannot proceed past the first element.  As described above, Plaintiffs

20   do not dispute the warrant as written established probable cause, and Plaintiffs failed to make the

21   required substantial showing to support a judicial deception claim.  So, on this record, there has

22   been no deprivation of a constitutional right.

23            Even had Plaintiffs made this showing, they fail to establish a dispute of fact regarding

24   their failure to train theory.  A local government is liable when it "fail[s] to train employees in a

25   manner that amounts to deliberate indifference to a constitutional right, such that the need for

26   more or different training is so obvious, and the inadequacy so likely to result in the violation of

27   constitutional rights, that the policymakers of the city can reasonably be said to have been

28   deliberately indifferent to the need." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th

United States District Court
Northern District of California

16

1    Cir. 2018) (quotation marks omitted). "A municipality's culpability for a deprivation of rights is

2    at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51,

3    61 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily

4    necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62

5    (quotation marks omitted). Only in the "rare" circumstance when "the unconstitutional

6    consequences of failing to train could be so patently obvious" could a city "be liable under § 1983

7    without proof of a pre-existing pattern of violations." *Id.* at 63-64.

8        Plaintiffs contends Napa County is liable under section 1983 because Deputy Scannell and

9    Officer Walsh lacked "training and knowledge regarding cannabis regulations." (Dkt. No. 123 at

10   23.) As evidence, Plaintiffs point to deposition testimony. Deputy Scannell testified that prior to

11   July 2021, he did not have any training about how cannabis waste should be handled, whether a

12   distribution license was needed to transport cannabis waste, or identification of a dying cannabis

13   plant. (Dkt. No. 125 at 12-13.) Likewise, Officer Walsh testified he did not receive any

14   information or training about a license holder "being able to destroy their own dead plants." (Dkt.

15   No. 125 at 28.)

16       That two officers did not receive training about cannabis waste disposal regulations is not

17   enough establish the "pattern of similar constitutional violations . . . ordinarily necessary to

18   demonstrate deliberate indifference for purposes of failure to train." *See Connick*, 563 U.S. at 61;

19   *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989) ("That a particular officer

20   may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's

21   shortcomings may have resulted from factors other than a faulty training program.").

22       Nor have Plaintiffs established this is the "rare" circumstance in which "the

23   unconstitutional consequences of failing to train" are "so patently obvious" for purposes of section

24   1983 liability. *Id.* As an example of that rare case when single-incident liability might be

25   appropriate, the Supreme Court offered the following hypothetical: "a city . . . arms its police force

26   with firearms and deploys the armed officers into the public to capture fleeing felons without

27   training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63 (quoting

28   *City of Canton*, 489 U.S. at 390 n.10). Plaintiffs provide no case or argument as to why the

United States District Court
Northern District of California

17

1    obviousness in the Supreme Court's hypothetical scenario is present here.

2    Because Plaintiffs have not identified evidence sufficient to support a finding of a pattern

3    of similar constitutional violations, and because they do not make a showing of "obviousness" to

4    substitute for a pattern of violations, they have not met their burden of creating a genuine dispute

5    of material fact on the failure to train theory of municipal liability.  So, the Court enters summary

6    judgment in favor of County of Napa on Counts Two and Three.

7    **IV.    SECTION 815.2(A) (COUNT IV)**

8    Count IV alleges a violation of section 815.2(a) of the California Government Code

9    against the County of Napa, asserting the County is vicariously liable for the unlawful acts of

10   Officer Walsh and Deputy Scannell.  (*Id.* ¶¶ 43-49.)  Under section 815.2(a), "[a] public entity is

11   liable for injury proximately caused by an act or omission of an employee of the public entity

12   within the scope of his employment if the act or omission would, apart from this section, have

13   given rise to a cause of action against that employee or his personal representative."

14   Plaintiffs assert "[b]ecause the facts in dispute require the denial of summary judgment as

15   to Plaintiff's federal claims, summary judgment should also be denied as to Plaintiff's state law

16   claims."  (Dkt. No. 123 at 25.)  As the Court granted summary judgment in favor of Defendants on

17   the federal claims, and Plaintiffs advance no separate theory or argument regarding Section

18   815.2(A) liability, the Court GRANTS summary judgment in favor of County of Napa on Count

19   Four.

20   **V.    BANE ACT (COUNT V)**

21   Under the Bane Act, an individual is liable if they "interfere[] by threat, intimidation, or

22   coercion, or attempt[] to interfere by threat, intimidation, or coercion, with the exercise or

23   enjoyment by any individual or individuals of rights secured by the Constitution or laws of the

24   United States."  Cal. Civ. Code § 52.1(b).  "The elements of a Bane Act claim are essentially

25   identical to the elements of a § 1983 claim, with the added requirement that the government

26   official had a 'specific intent to violate' a constitutional right."  *Hughes v. Rodriguez*, 31 F.4th

27   1211, 1224 (9th Cir. 2022).  As the Court granted summary judgment in favor of Defendants on

28   Plaintiffs' section 1983 claim, summary judgment in favor of Defendants on Count Five is

United States District Court
Northern District of California

18

appropriate, too.  Further underscoring this conclusion is Plaintiffs' failure to advance any

argument as to Deputy Scannell or Officer Walsh's specific intent, which is required for a Bane

Act claim.[8]  *See id.*

## MOTION FOR SANCTIONS

Prior to Defendants' motion for summary judgment, Plaintiffs moved for sanctions due to

spoliation of evidence, arguing Defendants "knowingly and/or recklessly allowed the destruction

of crucial photographs after litigation had commenced."  (Dkt. No. 107 at 2.)  Following oral

argument on January 9, 2025, the Court took "the motion under submission pending briefing on

Defendants' forthcoming motion for summary judgment."  (Dkt. No. 113.)

### A.    Relevant Facts

In a September 2023 case management statement, Plaintiffs "demand[ed] that all

photographs, videos, and reports of all involved law enforcement agencies be preserved."  (Dkt.

No. 72 at 5.)  And on February 9, 2024, Plaintiffs propounded a request for production on the

County of Napa seeking "all documents relating to Plaintiffs' arrest that is the subject of this

lawsuit, including but not limited to . . . any . . . photographs, video recordings, [and] bodycam

footage."  (Dkt. No. 107-1 at 26-27; *id.* at 27 ("Produce all video recordings related to Plaintiffs'

arrest that is the subject of this Lawsuit, including but not limited to body camera and dash camera

recordings.").)  "The County of Napa's response did not include photographs taken on July 17,

2021."  (Dkt. No. 107-1 at 7.)

In August 2024, at Deputy Scannell's deposition, counsel for Plaintiffs and Defendants

learned for the first time that Deputy Scannell had taken photos on July 17, 2021.  (Dkt. No. 110

¶¶ 2-3.)  Deputy Scannell testified he took photographs "of the plants in the back of the truck" and

"upload[ed] them onto a website like a server that stores them."  (Dkt. No. 107-1 at 45-46.)

Plaintiffs' counsel requested production of the photographs.  Defense counsel responded

the photographs were uploaded to evidence.com approximately a month after the arrest, on July

23, 2021, and deleted three years later on July 23, 2024—about a month before Deputy Scannell's

---

[8] Having granted summary judgment in favor of Defendants on all counts, the Court need not
address Defendants' motion as it relates to punitive damages and dismissal of the Doe defendants.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    deposition.  (Dkt. No. 107-1 at 54-61.)  Defense counsel explained deletion occurs "on a 3 year

2    basis" and "[t]here was no hold on the photos by the City."  (*Id.* at 54.)

3        **B.    Spoliation**

4        Spoliation "refers to the destruction or material alteration of evidence or to the failure to

5    preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

6    *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (quoting *Silvestri v.*

7    *Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).  Generally, a party who has engaged in

8    spoliation of evidence may be sanctioned under the inherent power of the federal courts to

9    sanction abusive litigation practices or under Federal Rule of Civil Procedure 37.  *Leon v. IDX*

10   *Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  But when the evidence at issue is electronically

11   stored information, then Federal Rule of Civil Procedure 37(e) governs. [9]  *Gregory v. State of*

12   *Montana*, 118 F.4th 1069, 1072 (9th Cir. 2024) ("Federal Rule of Civil Procedure 37(e)(2)

13   displaces the district court's power to invoke inherent authority in fashioning sanctions for the . . .

14   failure to preserve 'electronically stored information'").

15       As amended in 2015, Rule 37(e) provides:

16           If electronically stored information that should have been preserved
             in the anticipation or conduct of litigation is lost because a party failed
17           to take reasonable steps to preserve it, and it cannot be restored or
             replaced through additional discovery, the court:
18
             (1) upon finding prejudice to another party from loss of the
19           information, may order measures no greater than necessary to cure
             the prejudice; or
20
             (2) only upon finding that the party acted with the intent to deprive
21           another party of the information's use in the litigation may:

22           (A) presume that the lost information was unfavorable to the party;

23

24    _____

25   [9] Plaintiffs cite the incorrect legal test to determine whether to impose sanctions.  According to
     Plaintiffs, the Court should apply the test set forth in *Residential Funding Corp. v. DeGeorge Fin.*
26   *Corp.*, 306 F.3d 99, 105 (2d Cir. 2002).  (Dkt. No. 107 at 12.)  The advisory committee notes to
     Rule 37(e) expressly disclaim this test when the evidence at issue is electronically stored
27   information.  Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (explaining the
     amendment "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306
28   F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of
     negligence or gross negligence.").

1        (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

2        (C) dismiss the action or enter a default judgment.

3    Fed. R. Civ. P. 37(e).

4        Rule 37(e) governs this case.  First, the photos at issue constitute "electronically stored

5    information" as Deputy Scannell uploaded them onto evidence.com approximately a month after

6    the arrest.  (Dkt. No. 107-1 at 54-61.)

7        Second, as Defendants concede, the photos "should have been preserved in the anticipation

8    or conduct of litigation."  Fed. R. Civ. P. 37(e); (Dkt. No. 109 at 6 ("Defendants do not contest the

9    photos . . . should have been preserved in anticipation of litigation, given the photos were evidence

10   of the criminal transportation of marijuana, the probable cause of the underlying arrest of the

11   occupants of the truck.").)

12       Third, Deputy Scannell failed to take reasonable steps to preserve the photographs.  In his

13   police incident report narrative, Deputy Scannell neglected to mention the approximately seven

14   photographs he took with his bodyworn camera.  (Dkt. No. 110-1 at 3.)   He testified he does not

15   recall why he failed to mention them.  (*Id.*)  Regardless of the reason, when Plaintiffs filed suit, or

16   at the very least when Deputy Scannell was named as a defendant in the April 2023 complaint, he

17   should have taken reasonable steps to preserve the photographs, including alerting counsel to their

18   presence and/or downloading the photographs from evidence.com.  *See Gregory*, 118 F.4th at

19   1078 (concluding party did not take reasonable steps to preserve information when it failed "in

20   taking the actual steps necessary to download the video from the system before it was deleted").

21   The failure is particularly unreasonable in light of Plaintiffs' September 2023 case management

22   statement "demand[ing] that all photographs, videos, and reports of all involved law enforcement

23   agencies be preserved."  (Dkt. No. 72 at 5.)  And Plaintiffs' February 9, 2024 request for

24   production seeking "all documents relating to Plaintiffs' arrest that is the subject of this lawsuit,

25   including but not limited to . . . any . . . photographs, video recordings, [and] bodycam footage."

26   (Dkt. No. 107-1 at 26-27.)  When Plaintiffs made these demands, the photos had yet to be deleted

27   pursuant to the three-year document retention policy.

28       Defendants emphasize that Plaintiffs never propounded requests for production specifically

United States District Court
Northern District of California

21

on Deputy Scannell.  But even absent a request for production, parties have an obligation to preserve evidence.  S*ee also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").  Defendants also emphasize "[t]he City of Napa was the possessor of the photographs."[10]  (Dkt. No. 109 at 5.)  That Deputy Scannell uploaded the photographs onto a server used by the City of Napa does not excuse Deputy Scannell—a party to the litigation—from preserving evidence he knew or should have known was relevant.  *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.").

Finally, the photographs "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  Because the dispute is the plants' condition at the time they were seized, additional discovery cannot replace the images Deputy Scannell took in July 2021.  And while there are other photographs of the plants taken around the time of the arrest, (Dkt. No. 109 at 4-5; Dkt. No. 110-8 at 2-18; Dkt. No. 107-1 ¶ 9; *id.* at 49-52), none clearly show all the "approximately 610 cannabis plants" Deputy Scannell seized the night of the arrest.  (Dkt. No. 107-1.)  Having concluded the conditions required to trigger Rule 37(e) are satisfied in this case, the Court turns to the proper remedy.

### C.    Sanctions

Rule 37(e) specifies the findings the Court must make before imposing a sanction; paragraphs (1) and (2) of Rule 37(e) "require different findings depending upon the nature and severity of the sanction." *Gregory*, 118 F.4th at 1078.   Paragraph (1) provides:

> upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.

---

[10] Plaintiffs filed suit against the City of Napa in July 2022.  (Dkt. No. 1 at 5.)  Several months later, the parties stipulated to dismiss the causes of action against the City of Napa with prejudice. (Dkt. No. 38.)

United States District Court
Northern District of California

1    Fed. R. Civ. P. 37(e)(1).  Paragraph (2), in contrast, "establishes a more demanding standard

2    before the court may impose certain types of severe sanctions."  *Gregory*, 118 F.4th at 1078.

3    Under paragraph (2), the following sanctions may be imposed "only upon finding that the party

4    acted with the intent to deprive another party of the information's use in the litigation":

> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

8    Fed. R. Civ. P. 37(e)(2).  The Court first considers whether Rule 37(e)(2)'s "more demanding

9    standard" has been met before turning to the Rule 37(e)(1) inquiry.

### 1.    Rule 37(e)(2) Intent

11        In this case, there is no evidence Defendants intended to deprive Plaintiffs of the

12   photographs Deputy Scannell took the night of the July 2021 arrest.  In the context of Rule

13   37(e)(2), the intent required "is most naturally understood as involving the willful destruction of

14   evidence with the purpose of avoiding its discovery by an adverse party."  *Jones v. Riot Hosp.*

15   *Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024); *see also* Fed. R. Civ. P. 37 advisory committee's

16   note to 2015 amendment (explaining adverse inference is not appropriate "on a finding of

17   negligence or gross negligence").  "Relevant considerations include the timing of destruction,

18   affirmative steps taken to delete evidence, and selective preservation."  *Jones*, 95 F.4th at 735.  As

19   to timing, the evidence was destroyed three years after it was uploaded pursuant to the City of

20   Napa's three-year data retention policy.  There is no evidence Deputy Scannell took affirmative

21   steps to destroy the evidence.  Defendants, upon learning Officer Scannell took photographs,

22   produced the two photographs he took on his personal phone.  (Dkt. No. 107-1 at 58-59.)  Taken

23   together, the evidence is insufficient to support a finding Officer Scannell or any defendant

24   willfully destroyed the photographs to avoid discovery.  In the absence of such intent, the Court

25   cannot order the sanctions specified in Rule 37(e)(2).  *Gregory*, 118 F.4th at 1080 (9th Cir. 2024)

26   (the court's finding the destruction was not willful precluded the imposition of an adverse

27   inference sanction).  So, Plaintiffs' requested sanction is not warranted.  (Dkt. No. 107 at 2

28   (requesting "that the finder of fact is to adversely infer that the spoiled or destroyed evidence

United States District Court
Northern District of California

1  would have been unfavorable to the Defendants").)

2  **2.     Rule 37(e)(1) Prejudice**

3  Rule 37(e)(1) provides "upon finding prejudice to another party from loss of the

4  information, [the court] may order measures no greater than necessary to cure the prejudice."

5  "The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling

6  party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*

7  *v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (cleaned up).  "The rule does not place a

8  burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37 advisory

9  committee's note to 2015 amendment.  So, "[c]ourts have discretion under Rule 37(e)(1) to

10 determine how to assess prejudice on a case-by-case basis." *hiQ Labs, Inc. v. LinkedIn Corp.*, 639

11 F. Supp. 3d 944, 979 (N.D. Cal. 2022) (citing Fed. R. Civ. P. 37 advisory committee's note to

12 2015 amendment).

13 In this case, there was no prejudice.  The Court assumed for purposes of the summary

14 judgment motion the plants were cannabis waste as Plaintiffs insist the destroyed photographs

15 would show.  Even so, the Court granted Defendants' motion for summary judgment because

16 Plaintiffs did not identify evidence sufficient to satisfy the requisite substantial showing that

17 Officer Walsh knew the plants were cannabis waste.  And because Plaintiffs' judicial deception

18 claim did not survive summary judgment, there was no Fourth Amendment violation for which

19 Deputy Scannell could be liable as an integral participant.  So, the Court DENIES Plaintiffs'

20 motion for sanctions.

21 **CONCLUSION**

22 For the reasons stated above, the Court GRANTS Defendants' motion for summary

23 judgment on all remaining counts: Count One (Fourth Amendment), Counts Two and Three

24 (*Monell* liability), Count Four (Section 815.2(a)), and Count Five (Bane Act).  And the Court

25 DENIES Plaintiffs' motion for sanctions.  While Deputy Scannell failed to take reasonable steps

26 to preserve the photographs showing the cannabis plants on the night they were seized, there was

27 no prejudice to Plaintiffs.  A separate judgment will be entered.

28 //

This Order disposes of Docket Nos. 107 and 114.

**IT IS SO ORDERED.**

Dated: May 19, 2025

JACQUELINE SCOTT CORLEY
United States District Judge